IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SATYANARAYANA MEKARTHI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) Case No. 25-cv-4392 <br> KRISTI NOEM, Secretary, Department of ) <br> Homeland Security; TODD LYONS, Acting ) <br> Director of the Immigration and Customs ) <br> Enforcement, each in their official capacity and ) <br> not individually; and UNITED STATES ) <br> DEPARTMENT OF HOMELAND SECURITY, ) <br> ) <br> Defendants. ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, SATYANARAYANA MEKARTHI, for his Complaint against Defendants KRISTI NOEM, Secretary, Department of Homeland Security; TODD LYONS, Acting Director of the Immigration and Customs Enforcement, each in their official capacity and not individually; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, states and alleges as follows:

**INTRODUCTION**

1. On or about Thursday, April 10, 2025, the United States Department of Homeland Security ("DHS") unilaterally terminated the F-1 student status of numerous students throughout the United States under the SEVIS [Student and Exchange Visitor] system for unknown and

unspecified reasons.[1] Plaintiff SATYANARAYANA "SATYA" MEKARTHI is one of these students.

2. In December, 2024, Satya, a foreign national on F-1 student status, completed all coursework toward a Master of Science in Information Systems degree from DePaul University in Chicago, Illinois. DePaul University recommended Optional Practical Training (OPT) for Satya, and USCIS approved an Employment Authorization Document (EAD) on January 18, 2025, valid through January 17, 2026. Satya is scheduled to graduate with his class on June, 2025 for a ceremony to be attended by his family who will travel from India to see him graduate.

3. On April 8, 2025, Satya received an email communication from the United States Department of State, advising him that his F-1 visa, which bears an expiration date of December 1, 2027, was immediately revoked, apparently because "additional information

---

[1] *See, e.g.*, https://www.cbsnews.com/chicago/news/university-of-chicago-students-visas-revoked/Elizabeth Román, "5 Umass Amherst students have visas revoked," NHPR (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," CBS8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," Boston.com (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/;Binkley, Collin, Annie Ma, and Makiya Seminera, "Federal officials are quietly terminating the legal residency of some international college students", Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, "Trump administration cancels dozens of international student visas at University of California, Stanford", Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford

became available after your visa was issued." There is no indication in the email about what that additional information might be. See, Exhibit 1.

4. Satya was pulled over by police in the State of Indiana on Friday, May 3, 2024, while driving lawfully on an Illinois-issued Temporary Visitor Driver's License (TVDL)[2]; but was advised by the officer that his TVDL license was invalid in the State of Indiana. Satya was then arrested and charged with "Operating a Motor Vehicle Without Ever Receiving A License(,) A Class C Misdemeanor" by the State of Indiana.

5. Eventually, after appearing in court, and after obtaining and producing a standard Illinois driver's license to the Court, the charge was reduced from "NO OPERATOR'S LICENSE" to "No Operator's License In Possession", a civil violation; Plaintiff paid a $34.00 civil fine and $139.50 in court costs, a *civil* judgment was entered against Plaintiff for $34.00, and the case was dismissed. No criminal conviction was entered. See Exhibit 2.

6. Satya is not guilty of the "commission of (any) crimes of violence and for which a sentence of more than one year imprisonment may be imposed.", 8 CFR 214.1(g) (setting forth regulatory grounds for condition of a student nonimmigrant's admission and continued stay in the United States). Thus, his F-1 student status should remain in effect.

---

[2] A TVDL was lawfully issued to Plaintiff because he did not yet have a social security number at the time he sought an Illinois Driver's license, a prerequisite to obtaining a regular license.

7. Nonetheless, Satya's status in the SEVIS system[3] shows as "Terminated"[4], which means that he is ineligible to work under his current work authorization in his OPT program.

8. The effect of the revocation of Satya's visa has thus been to revoke his SEVIS status as an F-1 student, and therefore to terminate his ability to participate in the OPT program in which he has been working since December, 2024.

9. A single arrest for driving without a license does not constitute a basis for termination of Satya's OPT authorization, according to the government's own regulations; neither does a civil judgment for $34.50; and neither disposition justifies the revocation of his visa or the termination of his F-1 status.

10. Satya's dream of finishing his OPT program and working in the U.S. is now in severe jeopardy because of the Government's decision to abruptly, and without legal cause, terminate his F-1 student status under the SEVIS system without affirmatively notifying him or even his school in advance, and without providing him with any opportunity to contest such termination. Such conduct is a blatant violation of Satya's right to due process of law.

11. This news is shocking to Satya because he has not violated any rules governing the maintenance of his F-1 student status, such as "fail[ing] to maintain a full course of study[.]" See 8 C.F.R. § 214.2(f)(5)(iv).

---

[3] SEVIS "is the web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information regarding… Student and Exchange Visitor Program (SEVP)-certified schools… (and) F-1 and M-1 students studying in the United States…" See, https://studyinthestates.dhs.gov/site/about-sevis.

[4] See, Exhibit 3.

12. In light of DHS's unilateral termination of Satya's OPT authorization, the termination of his student status in the SEVIS system, and without the benefit of notice or explanation, Satya can no longer conduct any work under OPT, he is without lawful nonimmigrant F-1 status in the United States, and therefore, faces imminent arrest, detention and removal by ICE. Not being able to work through participation in the OPT program has also interfered with a core component of his post-graduate training, crucial for his future employment and career.

13. At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). "At the core of these due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard. *See, e.g., Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–98, 73 S.Ct. 472, 477–78, 97 L.Ed. 576 (1953); *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.1991)(citing cases); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here.

14. For the agency-initiated termination of OPT authorization F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See, Jie Fang v. Director U.S. Immigration & Customs Enforcement,* 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other

words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status under the SEVIS system; nonetheless, that has been the effect of the termination of his visa.

15. DHS's own policy guidance confirms that "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[5] Rather, if the visa is revoked, *the student is permitted to pursue his course of study in school*, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[6] If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of a F-1 *visa*, DHS must assert grounds under and comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

16. The revocation of Plaintiff's visa has instead terminated his pursuit of his course of study, through the OPT program in which he was participating in an internship with a third-party employer.

## JURISDICTION AND VENUE

17. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant), and 5 U.S.C. § 702 (right of review).

---

[5] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[6] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

18. Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

19. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 as Plaintiff Satyanarayana Mekarthi resides in the Northern District of Illinois.

## PARTIES

20. Plaintiff Satya Mekarthi is a native and citizen of India who currently resides in Illinois. He has resided in Illinois since the fall 2023. Since graduating from DePaul University in Chicago, Illinois in December, 2024 with a Master's Degree in Information Systems, Satya has continued his education through the OPT program for F-1 students, and has been employed by a tech company in Illinois on an internship.

21. Defendant Kristi Noem is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

22. Defendant Todd Lyons is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of Department of Homeland Security. He is sued in his official capacity.

23. Defendant Department of Homeland Security ("DHS") is a federal government agency. DHS is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including ICE.

## FACTS

### Background on F-1 Student Visa and Status

24. Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the U.S. Department of State. Then, once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

25. An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. 19. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advise, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

26. For noncitizen students, they are "subject to an array of regulations." *Id*. (citing 8 C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)). Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the

school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). CPT usually occurs during the course of study and before its completion.

27. "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*., (quoting 8 C.F.R. § 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies; and permits work for up to three years for STEM-degreed students like Plaintiff.

28. "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. § 214.2(f)(5)(iv)). "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of study without the approval of the DSO **or otherwise fails to maintain status**' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv))(*emphasis supplied*).

29. Under the regulation, DSO's at schools must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). SEVIS termination is governed by SEVP policy and regulations.

30. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

31. For the first, a failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other

violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

32. Regarding the "crime of violence" category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses and civil judgments do not meet this threshold for termination based on criminal history.

33. For the second, an agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

34. Accordingly, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of visa revocation *after* a student has been admitted into the

United States because the student is permitted to continue the authorized course of study. *See*, ICE Policy Guidance 1004-04–Visa Revocations (June 7, 2010).[7]

35. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[8]

36. DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting", despite that there has been no actual violation of the student's F-1 status. If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

37. While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. See 8 U.S.C. § 1227(a)(1)(B); U.S.C. § 1201(i). The Immigration Judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates to F-1

---

[7] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[8] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation

student status. See 8 C.F.R. § 1003.18(d)(ii)(B). Only when a final removal order is entered would the status be lost.

38. The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system, because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

39. Students who have failed to maintain F-1 status may seek reinstatement of their status, with a re-activated CEVIS registration. Under regulations, "a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances;' 2) does 'not have a record of repeated or willful violations of Service regulations'; 3) is pursuing or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that the violation of status resulted from circumstances beyond the student's control, or that the violation relates to a reduction in the student's course load that would have otherwise been permitted if authorized by the school and that failure to approve reinstatement would result in extreme hardship to the student." *Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

**Termination of Satya Mekarthi's F-1 Student Visa and Status**

40. Satya is a 26-year-old graduate student at DePaul University who has been pursuing a graduate course of study in Information Science since September, 2023.

41. Satya first came to the United States in the fall of 2023 under an F-1 student visa, to pursue his graduate program at DePaul University.

42. In December, 2024, Satya graduated from DePaul University with a Masters degree in Information Systems. Because DePaul University has only one graduation ceremony for this program, and because it has been Satya's dream to walk across a stage and receive his diploma from the University, with his class mates, and with his family able to observe that important event, Satya has registered for the commencement proceedings for the June, 2025 ceremony, and his parents and family have planned to travel from India to attend the ceremony.

43. As noted above, Satya received an email from the U.S. Consulate in India, on April 8, 2025, notifying him that the U.S. State Department has revoked his visa, Exhibit 1.

44. Satya immediately contacted his student advisor at DePaul University to determine his status with the University; and on April 10, 2025, DePaul University's International Student Advisor told him orally, by telephone, that his "F-1 status was terminated in SEVIS by the system" because of a "criminal records check and/or that his VISA had been revoked." He was also advised that all employment authorization, on- or off-campus, ends immediately, and was advised to cease any employment immediately.

45. For the U.S. Government, the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility. *See*, *e.g.*, U.S. Department of State, Foreign Affairs

Manual, 9 FAM 402.5-49B ("…the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility.").

46. A copy of Plaintiff's SEVIS record as of April 21, 2025 is attached as Exhibit 3.

47. Satya had previously been arrested and charged with a minor traffic violation, as set forth above in paragraphs 4 & 5. He has not committed any crime, and has not been convicted of any crime. The traffic matter concluded with what was explicitly, by court order, a "civil judgement" and was disposed of and dismissed by the Court in September, 2024.

48. Satya has complied with all rules and regulations as someone with student status. He has not been told and does not know why his visa was revoked, nor why his SEVIS record (F-1 student status) was terminated.

49. The termination of Satya's student status in SEVIS has put Satya's education, research, and career trajectory at risk. In particular, he is no longer authorized to work in the capacity of an OPT employee, which has terminated his ability to work, and will severely affect his ability to complete his studies and obtain the Master's degree which he has nearly finished.

50. This termination may also put Satya in immediate detention and deportation—an outcome other students have already faced.[9]

## CLAIMS FOR RELIEF

### COUNT 1

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**(Unlawful F-1 Student Status Termination)**

---

[9] *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025); *Liu v. Noem*, 25-cv-000133 (D. NH., Apr. 8, 2025.

51. The foregoing allegations are realleged and incorporated herein.

52. The United States Constitution requires notice and a meaningful opportunity to be heard. *See Capric v. Ashcroft,* 355 F.3d 1075, 1087 (7th Cir. 2004)("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir.2000). And these rights apply in a deportation proceeding. *Podio v. INS*, 153 F.3d 506, 509 (7th Cir.1998) (citations omitted). Due process requires that an applicant receive a full and fair hearing which provides a meaningful opportunity to be heard.")

53. Defendants terminated Plaintiff's F-1 student status under the SEVIS system without (i) notifying him about this termination decision, (ii) failing to provide Plaintiff with an individualized hearing before an impartial adjudicator, and (iii) failing to provide Plaintiff with adverse evidence and an opportunity to confront and respond to such evidence.

54. Defendants' disregard for complying with the well-established due process principles violated Plaintiff's due process rights.

## COUNT 2
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS AGENCY ACTION

**(Unlawful F-1 Student Status Termination)**

55. The foregoing allegations are realleged and incorporated herein.

56. The APA empowers this Court to set aside agency action that is arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A), (C).

57. Agency action that violates constitutional rights must also be set aside. 5 U.S.C. § 706(2)(B).

58. An action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

59. Defendants' action in terminating Plaintiff's status in the SEVIS system is arbitrary and capricious.

60. Defendants' termination of Plaintiff's F-1 student status under the SEVIS system is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order").

61. Defendants' termination violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

62. Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status based simply on revocation of a visa.

63. Moreover, in making its finding that Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiff's individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determination. Defendants' lack of consideration of any relevant facts specific to Plaintiff before making its determination was arbitrary and capricious and in violation of the APA.

## COUNT 3
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### (Unlawful Detention)

64. The foregoing allegations are realleged and incorporated herein.

65. The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

66. In light of the unlawful termination of Plaintiff's SEVIS record and F-1 student status, Plaintiff is at risk of abrupt detention without prior notice. Plaintiff is a graduate student who has not committed a crime punishable by the withdrawal of SEVIS status. Plaintiff has ensured that he complied with all rules. *See, Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for Plaintiff's immigration detention, preventing him from pursuing his studies.

### RELIEF SOUGHT

Plaintiff seeks that Court enter an order of judgment in Plaintiff's favor and against Defendants, as follows:

(1) Assume jurisdiction over this matter;

(2) Declare that Defendants' termination of Plaintiff's F-1 student status under the SEVIS system without affording him sufficient notice and opportunity to be heard violated Plaintiff's Fifth Amendment due process rights and the APA (including under 8 C.F.R. § 214.1(d));

(3) Issue an injunction requiring Defendants to provide adequate individualized proceedings before an impartial adjudicator for Plaintiff in which he will be entitled to review any adverse

evidence and respond to such evidence prior to any determination about whether Plaintiff's F-1 student status should be terminated;

(4) Order Defendants to reinstate Plaintiff's valid F-1 student status under the SEVIS system immediately at DePaul University;

(5) Enjoin Defendants from detaining or taking steps to detaining Plaintiff, pending a resolution of the instant case;

(6) Award attorney's fees and costs pursuant to the Equal Access to Justice Act; and

(7) Order any further relief this Court deems just and proper.

                Respectfully submitted,

                /s/ *Jeffrey Grant Brown*
                Jeffrey Grant Brown
                Attorney for Plaintiff

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd. #107
Chicago, Illinois 60604
(312) 789-9700
Illinois ARDC #6194262
Attorney for Plaintiff